We'll start with 19-95-96, Orellana-Recinos v. Barr. Ms. Preston, are you ready? I'm ready, Your Honor. Yes, we should... Everyone else? Yeah, we should just have Ms. Preston and Mr. Mack visible right now. Great, I think everyone's turning off their cameras. Yeah. Ms. Eades, I think you're in the next case. So if you can... You've got your... You're muted, but your Jane, since you had to ask her to start her video, you might have to ask her to stop her video as well. Okay, thank you. Let me do that. Okay. Very good. Ms. Preston, you may begin. Okay. I'd like to address the issue of motive. Obviously, when it comes to the nexus between a protected ground and the persecution or fear of persecution, motive is the primary thing that's addressed. I think the mistake comes in the analysis a lot of times because there's two types of motive. There's the motive of what did the person hope to gain? And there's the motive of why was the particular target chosen? And I think the immigration judge in this case kind of skipped over the second part and gave primary emphasis to the first part. I quoted a case in my brief, Reyes, the Tenth Circuit case. And it was a case where the petitioner, the immigrant had said that her uncle targeted her because of her gender, and he targeted her because of wanting to get sex from her. And the Tenth Circuit, this court ruled that he didn't target her because of her gender, he targeted her because she was in a vulnerable position, and he would have targeted anyone in a vulnerable position. But the primary thing that's important about that analysis is the court didn't skip over why she was targeted and just say, oh, he didn't target her because of family membership or sex, he just wanted sex. And that's what's happening in this case. And the DHS brief is the focus is on they wanted to recruit Kevin for a gang. And that was what they ultimately hoped to achieve. But that's not the end of the analysis. The question is, why did they target his mother for that purpose? Could I ask two questions? One is sort of a foundational question. I want to make sure I have cleared the scope of the appeal. Okay, sure. The nexus requirement is a factual determination, right? Yes. And you're not, that is the central focus or the exclusive focus of your appeal. You're not challenging the legal framework under which the BIA made its factual nexus determination. No, it's the factual determination. Okay. The second question relates to the argument that you were just making. Well, as I understand the BIA's position, or I mean, the government's position here, what the government is doing is saying that they targeted her because of her control over her son. As I view that, anyone could have that control over her son and therefore would have been subject to being targeted. Therefore, they were not targeting her because she is his mother qua mother. They're targeting her because she is the person in position to exercise control. So going to your first step, if I understood those two points in your analysis, well, that first point, that first step doesn't get you where you want to get because it has nothing to do with her protected group of family. It has to do with the fact that she exercises control over it. Please respond to that. Yes, I think that is the core of this. And that was kind of the issue addressed in Hernandez Avalos. The issue is that very, the definition of family is intertwined with that control such that you couldn't separate those. Well, the point is, why couldn't the BIA do that? Why couldn't the BIA note that we have to be under a substantial evidence standard compelled to determine that the BIA was erroneous? Why couldn't the BIA factually infer that there is a distinction to be made between exercising control in family status? Hernandez Avalos declared that distinction to be meaningless. I think those were its terms. Well, fine. That's what the four circuit determined in that case. But as a factual matter, why are we compelled to determine that that exact same distinction is meaningless? And just a brief follow up. Well, I mean, couldn't, wouldn't the same thing apply to somebody who was his guardian or somebody who happened to be in some other situation of authority over them? Wouldn't the gang have done exactly the same thing? You know, I think you have to really break apart the definition of family in a way that's not logical or reasonable in order to reach that end. You know, in the Lopez case, it makes sense. It's not only a family member that might help this sister escape a abusive relationship. She could have called a friend, a neighbor, anybody. But the very nature of a minor child is that the person that's in control of their life is the mother or father or immediate family. That's the definition of family. Are there exceptions to that rule? Yes. You know, in LEA, the Romanoff family was, you know, kind of defined as the quintessential definition of family. But there were some other people that were included in that assassination because they were kind of aligned up with them physically and intertwined with that family. But it didn't break apart the fact that this was family, even though some other people were caught into that web. There are exceptions to that rule. There could be a foster parent. Let me look at it from the other point of view. The fact that the mother is family is not the issue is what Judge Holmes has been pursuing because it's someone who has control. Right. Now let's look at what happened to other members of the family who didn't have control. If there doesn't seem to be any animus against family, if the social group were mothers, then you might have you'd have a better argument, I think. But I've got a concern that there was no threat against the sister. And that suggests that there's no animus against family. It's not like you did. There's a case in the Ninth Circuit, I think it was, where someone had hurt the gang and all the members of the family were being killed or disappearing as a result. That shows animus toward family members. How do you account for the fact that how is your theory consistent with nothing being done or even threatened to the other member of the nuclear family? Um, there's a couple of things that the IJ mentioned. The immigration judge also used the word animus. I think animus revenge is one reason a family might be targeted. But that's not the only reason. Animus doesn't mean revenge. Animus could be you hate everyone who belongs to this particular racial group. You're not retaliating against them. But I would think that's what it means to want to persecute someone because they belong to a group. That would mean the word I would use for that to describe that is animus toward that group. Am I wrong about that? I believe it expands quite a bit beyond that. In matter of LEA, the 2017 decision, they actually do go through quite an analysis saying animus toward the family might be one reason where you want to kill all the members of the family for some particular reason. But when there's another reason, like, for instance, it's not even in doubt that the reason here was because they wanted to recruit Kevin into the gang. That was the reason that they targeted the mother. But when it's that reason, then it's going to manifest a little bit differently. And the control is actually the issue. The other thing is this whole case from beginning to end, the events lasted one month. And Jennifer answered the phone one time. She's 25. She's married. She lives apart from the mother. But the immediate family, not just mother, but as a definition, nuclear family, that was the definition in the Hernandez-Avalos case, nuclear family. They didn't parse it down to say, well, it was just the mother. In fact, the mother was the one targeted. But as a societal rule, the nuclear family is the one that's the cradle of protection and control for the minor children. But that includes the sister. And that includes the sister for whom no- Well, I think, yes, it can and would. This only manifested for a month. So there was only three events. They're not going to go seek revenge on the sister because this wasn't a revenge case. This was a control case and a kind of a blackmailing or threatening case to try to get control of this boy. Isn't that exactly the point Judge Holmes was making? That their problem with the woman, the mother, was that not that she was a relative, not that she was a really close relative, but that she had control. And so if she were a feeble woman who had no influence over the child, you're saying she wouldn't have been targeted because she didn't have control. But that suggests that the reason she was targeted wasn't because of her intimate family relationship, but because of control. I don't see what's wrong with Judge Holmes' questions here. I think these things get so intermeshed. I think there's the case, I guess it was LEA, the 2017 case, where they were targeting the family because they owned a store and they wanted to get that store. And the court made an important distinction, just like in the Lopez case. If they moved out, sold that and another family was there, they target that family. This isn't something that can be separated out. Yes, it's control, but it's control because of the family relationship. It's because of the mother relationship. But your social group isn't mother. I understand what you're saying. I understand what the opposing counsel said about that. But I do believe the nuclear family itself is the cradle of control for minor children. The fact that if the sister would have answered the phone and interacted with these people, they likely would have put the threats toward her too. A maid, no. A visitor, no. But the nuclear family, and I mean... Let's say your argument is a pretty good one. We're reviewing a fact finding by the IJ, affirmed by the BIA. Why is your argument so compelling that we have to reverse when the fact finders didn't see it as relating to the family, as being caused by the family, by the control? I think it boils down to whether or not you agree with me that the nuclear family is... The control comes from that at its core, and it's so intertwined with that for minor children that it's as simple as saying the sky is blue because that's the way it is. If you didn't agree with that, then you wouldn't feel that way, or you wouldn't come to that conclusion. What it boils down to, or does it boil down to how many central reasons there are for the persecution on account of? You don't have the classic case. Classic case would be they're after this family because they have gone to the government, and they're leading a protest against drug dealers or something, so they're going to kill everybody in the family. That's an easy one. But Hernandez, it's not that kind of case either. It's your kind of a case. And what the court turns on, they don't say, what's the one central reason for the persecution? That's the only thing we're concerned about. They say there are multiple reasons, central reasons, and if you have one of them, then you're going to prevail. And this looks like one of them. Is that your argument? No, no. It's basically the argument. It's kind of like the Romanoff family. Their goal was to install this new government. That was their goal. And even, by the way, when the Romanoff family was assassinated during that revolution, six million Russians died. So even the general lawlessness, but the bottom line is they targeted that family to achieve that goal. And I don't think, I mean, there's huge numbers of cases where people are targeted because they're going to accomplish a secondary or a primary economic goal, political goal. And that person is just fodder for that goal. And this, I think, is the same way. But in Lopez, in LEA, the question is asked, would they have selected her if she didn't stand in that position? And that's where it seems to me you get tripped up, because I could very, this turns on whether the mother, whether the son would sell drugs for the gang. And I could very easily envision a situation in which the mother would affirmatively support her son selling drugs for the gang because she would get a cut out of that. And in that situation, she wouldn't be challenged. She wouldn't be attacked. She wouldn't be subject to persecution. So if she's not subject to persecution in that situation, then it turns on what she does, not who she is. And in this situation, they went after her because she didn't do, she would not exercise her control in a manner that was satisfactory to them, right? That's correct. But they, she was in that position and they target her because she's the mother.  And so. You can finish that thought. Time's up, but go ahead. Okay. Just the fact is there's some conduct involved on her part. Yes, again, there's exceptions to the rule about guardians, and there's exceptions to the rule about mothers who want their sons involved in criminal activity. But the general rule of nuclear families that we, in this country, in every country is the mother and the nuclear family is there to protect the minor children. And that's what got her targeted by this gang. Thank you. Are there any further questions from the panel? Thank you, Ms. Preston. Mr. Mack. Good morning, and may it please the court. Counsel for the respondent, Greg Mack. Judge Hartz, on the Ninth Circuit case you were searching for, that's the Basin decision, Basin versus Gonzalez. That's at 423 F3rd 977. And it's discussed in the court's unpublished decision in Lopez. And secondly, what I just heard from petitioner's counsel is that this is a maternal based case. Well, that's not exactly the case that was presented to the board. What was presented to the board was a particular social group comprised of the son's immediate family. And as petitioner's counsel notes, motive is key in this case. And the gang's motive here involved recruitment to further their financial interest in illicit drug trafficking. And the record does not compel the conclusion that the gang held a particular animus toward petitioner Kevin Rosales or Yana's immediate family. In the asylum context, whereas here private actors are motivated by crime or money or both, there is a lack of nexus. The threats occurred because the gang was focused on recruitment to line its own pockets, not because the lead petitioner was a member of her son's immediate family. In fact, a particular social group comprised of all three people where the alleged persecutors are motivated by financial gain or furthering their illicit objectives. The record does not compel the conclusion that the applicant was persecuted because they were members of a family. I want to be clear here. There is some suggestion in your brief that there may be some reason we don't have jurisdiction over this case. You're not really telling us that just because they didn't cite Hernandez Avalos to the board that we don't have jurisdiction over this case or over the entire petition, are you? No, I'm not saying that, Your Honor. What I think I'm saying is that everything you just heard was not and 8 U.S.C. section 1252.1 says that before claims can be presented to the Court of Appeals, they should at least be shown to the Board of Immigration Appeals before this court reversed. I'm not saying you throw out the case because they didn't cite Hernandez Avalos. What I'm saying is they didn't give the board an opportunity to hear their legal theories. So to hear... Hold on. Why didn't they? I mean, you look at their notice of appeal. Your notice of appeal sketches out exactly the theory because it's a factual theory. They're acknowledged. That's why I wanted to ask her that question. This case is a fact-based case. And in her notice of appeal, she... I don't think there's any... Anybody would have been surprised. I certainly wasn't surprised when I read her notice of appeal about what this case is about. And the board would have seen that notice of appeal, too. So the fact... They have a box for checking filing a brief or not. So presumably they anticipate some people won't file a brief. So the fact that she didn't file a brief did not, does it, leave the board in the dark concerning what her factual allegation is. And that's key. They have her final factual allegation. And certainly the board wrote a decision. To your point, the board didn't say, we don't know what you're saying. They wrote a full-blown decision. My point is, it's hard to accept that the board should be reversed because there's a Fourth Circuit decision out there that was never presented to the Board of Immigration Appeals. I'm sure the board would have liked to have talked about Hernandez-Avalos, never got the opportunity to do so. So it's hard to hear a person come before this court and say, well, if we were in the Fourth Circuit, we would carry the day. Well, they didn't give the board that opportunity. What if the Fourth Circuit handed down its decision after the BIA and before the briefs were filed? We'd consider it, would we not? Oh, yes. You would consider it, Your Honor. But this exhaustion point is not my broader point, of course, Your Honor. We're making the point that, look, the board shouldn't be reversed for reasons that were never presented to it. But you presented a jurisdictional issue. Yes. And we pretty much have to address that. I'm not particularly impressed by it for exactly the reasons Judge Holmes has explained. The notice of appeal seems to say enough. But... I understood. It's not my broader point. Okay, okay. You're not going to deny on that. No, I'm not going to hang my... I'm not going to die on that hill. Then talk about why Hernandez-Avalos should not lead us to be compelled to conclude that the BIA was in error. What about that case is not mapped on to the facts of this case such that we should reach the same result here? I think these cases are individual cases, and we take them one by one. And I think, as we pointed out in our brief, there's another case in the Fourth Circuit, Contreras-Mejia, that comes out a different way. So we... Well, that's an unpublished opinion, if I recall correctly. Is it not? Correct, Your Honor. Well, then it's not presidential. But Hernandez-Avalos is the presidential case that we have. And they've spoken. So what I'm trying to get from you is what is the distinction that you would... the salient distinction or distinctions that you would draw from that case? The distinction, I would say, I believe, Your Honor, is that the teacher tells us why the gang is recruiting individuals. They're recruiting individuals at the school. There's no particular animus toward this family. There's nothing unique about this family. They want the kids to sell drugs. They're at the school. And the teacher tells us that because at page 126 of the record, the teacher tells the mother the gangs are recruiting kids at the schools. And so I think that's the distinguishing factor here. It's not as if this thing started at Petitioner's house. To be sure, they ultimately got to Petitioner's house. But it didn't start at Petitioner's house. They didn't pick up Petitioner's son on the street randomly somewhere. They were the local... The focal point was the school. And the teacher tells us the gang was at the school to recruit kids to sell drugs. The gang's purpose here was to recruit the kids for their own illicit gain. And they had no particular animus toward this particular family. And as the court was noting... Let me suggest something else. Maybe I didn't read the Fourth Circuit opinion correctly. But their complaint seemed to be that the BIA didn't really explain itself. And after that decision was the LEA decision. Is it LEA? Yes, Your Honor, I believe. Yeah. Which goes into great detail about how they deal with this in the family situation. And it gives guidance that wasn't there before. They didn't outright reverse. I don't think they could before Circuit. They sent it back for an explanation. And now we've got some better analysis, which I found helpful. I think it supports the decision here. Am I misreading these cases? No, I think you've read that, Hernandez-Avalos, correctly. I think the language that the Fourth Circuit uses is that the board undertook an excessively narrow examination concerning the role of the maternal relationship. And as I pointed out earlier, the maternal relationship was not put forward as it was here today. What the board had was a particular social group defined as immediate family of the petitioner's minor son, not the maternal relationship that the mother had with the son. And as one of the judges pointed out, the daughter wasn't impacted at all by the gangs here. So we don't have an excessively narrow reading to get to the point on Hernandez-Avalos. We don't have an excessively narrow reading of the maternal relationship in this case as it was in Hernandez-Avalos. While we're on this case, what I focus in on is the paragraph where they say that the agency decision is manifestly contrary to law and an abuse of discretion. And what precedes that is the court's conclusion that the maternal relationship to the son is at least one central reason. And what that raises with me is, well, how many central reasons can you have? And at least the Fourth Circuit appears to say you can have multiple ones and that this central reason, the maternal relationship, is enough all by itself. And if that's the case, we have the same maternal relationship, basically the same facts. So why would the Fourth Circuit not control if we were in the Fourth Circuit? And I guess a different way of saying that is, are you arguing that the Fourth Circuit is wrong or are you arguing that it's distinguishable from our case? I think it's distinguishable from your case. And I argue in the Fourth Circuit as well as other circuits, so I don't want to be at crossways with any circuit on the law, Your Honor. But let me say this. I don't think the Fourth Circuit's statements with respect to there are many central reasons is the law of this court. I think it's hard to say that there are multiple central reasons. A central reason is a central reason. And this court's law with respect to that is the Dallacote claims, which is cited in our brief. It talks about there are central reasons and then there are tangential and incidental reasons based on the board's decision in matter of JBMN and SM, which was also cited in our brief. So I'll say this about the Fourth Circuit. I think it's hard to say that there are multiple central reasons, and that's not this court's law. This court says there are central reasons and then there are tangential and incidental reasons. And the fact that the petitioner's mother was threatened by the gangs is not a central reason why the gang was after the family. The gang was after filling its coffers and expanding its ranks to sell drugs. As was pointed out earlier by one of the judges, anyone who held sway with respect to the child, be it the school, be it the family, be it if the son worked at some shop somewhere, a shopkeeper, anyone who held sway over this child would have been in the gang's way to fill its coffers and expand its ranks. And on this standard of review, that the evidence has to compel a contrary conclusion, there's just no way that we think the court should grant the petition. We ask the court to deny the petition for review. There's no further questions. Let's see. Any further questions? Okay. Thank you, Mr. Mack. Thank you. I guess your time has expired, Ms. Preston. Did you want 15 seconds to say something? Yes, I had 15 seconds. Yeah, really brief. Okay. I'd just like to say that when it comes to the central reason, I think in Lopez, the question was asked, and in matter of LEA, would they have selected her if it was not for her membership in the social group? And I think that's where the analysis ends. Good use of your time. Thank you. Case is submitted and counsel are excused.